Madam Clerk, please call the first case. 111-2516, City Colleges of Chicago v. Michael and McCain. Counsel? Thank you. May it please the Court, I'm Bill Lowry, on behalf of the Plaintiff Appellate, City Colleges of Chicago. This matter comes before you today following the Plaintiff's appeal of the Arbitration, Commission, and Circuit Court decisions in this matter. Now, I appear before this Court, as well as my highly regarded opponent, Bill Turner, in absolute integrity. With that noted, I must say, while I do not agree with the Commission's finding of accident and its determination of manifestation date, while I do not believe the Plaintiff has waived its dispute regarding the issue of accident and the determination of the manifestation date, I am mindful of the manifest weight of the evidence standard. And when considering this standard and the credible evidence of record before this Court, I cannot assert that the Commission's decision proves irrational or that an opposite conclusion is clearly apparent relative to the sole issue of accident. But I will assert that the Commission's finding that the petitioner is entitled to have and receive temporary total disability benefits for the period February 17th of 06 through November 16th of 09 proves contrary to law. Is that because Dr. Mess determined the claimant had reached LMI? It is, Your Honor. And as you know, Illinois courts have repeatedly held that when a claimant seeks TTD benefits, the dispositive inquiry is whether the claimant's condition has stabilized, i.e., whether the claimant has reached maximum medical improvement. That's the law. That's this case. The appellee, Liza Enriquez, reached MMI on October 11th, 2006, more than three years before November 16th, 2009, the day through which TTD benefits were awarded by the Commission. Now, it's not me saying that MMI was reached on October 11th of 06. It's not city colleges saying that. It is Dr. Mess, as Your Honor has already noted, who noted on October 11th of 06 petitioner had reached maximum medical improvement. Now, Liza Enriquez argues in her brief that the appellant hangs its entire argument on a box that was checked on a physician's disability form that was filled out on that date, never expressed an opinion that she had reached maximum medical improvement as of that date. Well, that checked box is part of the credible evidence of record. That box was following a statement that says, has claimant reached maximum medical improvement? Dr. Mess noted yes. There's a box right next to it where he could have noted no. That block is blank. There's a section next to that box where it says, if no, when? That's left blank. Equally compelling, the petitioner testified relative to this issue of MMI. This was me. If the records of Dr. Mess show on October 11th of 2006 he noted you had reached maximum medical improvement for your condition, would that seem correct to you? This was her. Correct. Again, that's not me saying it. It's not city colleges saying it. It is petitioner's own treating physician, Dr. Mess, and petitioner's own words at arbitration. Now, mindful that it was the burden of Liza Enriquez to establish entitlement to TTD before the commission, I ask, where is there an alternative opinion bearing on this issue of MMI? In her brief, Liza Enriquez seemed to suggest that TTD was payable through arbitration November of 2009. As of that date, she had only been released to restricted work. Okay. What's the import of that? MMI is not defined as a full-duty release. MMI is not defined as a restricted release. MMI is not tied to a release at all. MMI is maximum medical improvement. It may occur with or without a release to work, full, restricted, or otherwise. In this case, and in this record, MMI was established by Dr. Mess and by Dr. Liza Enriquez. And in her brief, when there is this suggestion that the restricted release to work is the same as, is connected to, MMI, I really look and believe that this Court has already faced this issue before. It faced this argument before in the Nascotti case, page 4 of the appellate court decision. In arguing for the propriety of this decision, the claimant merely claims that TTD benefits are proper whenever an injured worker is unable to perform any substantial gainful employment due to a condition which is the direct result of a work-related injury. While this argument may contain some truth, it ignores the fact that once a claimant reaches MMI, he or she is no longer entitled to TTD benefits. That is this case. Mindful of this case precedent, mindful of interstate scaffolding, as well as the evidence of record before this Court, we submit that the Commission's award of TTD benefits for the period February 17th of 06 through November 16th of 09 is affirmed and confirmed, but a circuit court should be reversed. Thank you. Thank you, Counsel. Response? May it please the Court. William Turner on behalf of the defendant, M. Liza Enriquez. I will contain or limit my statements to the MMI discussion as the other, I'm assuming Counsel waived the other arguments. And with regard to the MMI argument and the TTD between February 17th through the day-to-day hearing on 11-9 of 2009, plaintiff was working up until that time. The evidence here is that the Respondent's Counsel sent her a letter saying, do not return to work until after we have you examined by Dr. Carroll. She was examined by Dr. Carroll in February of 2006, I think it was the 17th. He said that she did have restrictions, there were restrictions on her activity, that that was related to work. And that he thought that she should have a functional capacity exam and that he hoped she would reach massive medical improvement in six to 12 months. At the same time, Dr. Mess was sending her or wanted her to have physical therapy. The issue with the TTD comes down because Respondent did not take her back to work. Plaintiff went back to work. She had already been working with some restrictions. The reason for the IME, according to the testimony, was because she had, Dr. Mess had placed restrictions on her, including some workplace modifications, to help with the continuing problems she was experiencing in her hands from the carpal tunnel with her job as a foot therapist. Defendant did not want to, Respondent did not want to give that to her, so sent her for an IME with Dr. Carroll. Instead of accommodating her and sending her for a functional capacity exam, they sent Dr. Carroll an updated job description which altered how her job was done. The arbitrator found the second job description to be uncredible and did not give much weight to the finding that Dr. Carroll's amended findings that the carpal tunnel was not related to work. But there was no issue in that with regard to whether or not she needed a functional capacity exam, whether she needed the accommodations at work, and whether she needed additional physical therapy and treatment which Dr. Mess had already prescribed for her. Let me just touch on two things. Sure. Did Dr. Mess, her treating physician, opine that she had reached MMI on October 11, 2006? October 11, 2006, in filling out her disability forms because she couldn't work with her hands, they wouldn't take her back, and she applied for disability through MRF. So as part of that MRF document, they wanted to know whether she was, her condition was static or not. So yes, as far as that document said, he said she had reached MMI because his opinion was that without the accommodations that she was given, she could never return to full duty as a clerk typist. What counsel says, is the law that factors restrictions on her returning to work, does that mean that she didn't reach MMI? But he was also ordering additional treatment for her. There's an inconsistency in that because Dr. Mess was always prescribing additional treatment. Respondent, after the IME by Dr. Carroll, the respondent cut her off from all benefits, stopped authorizing medical treatment, stopped physical therapy, wouldn't call her back to work with the restrictions that she had already had in place and she was working with before. So did any of her treatment after October 2006 directly relate to the carpal tunnel or to the triggering of her right ring finger? Not, no. Isn't there further evidence of the fact that she reached MMI in October? One would think, unless we look at the testimony of the plaintiff herself, while she was working, her condition would flare with work. After that date, it was getting progressively worse to where she saw Dr. Mess in 2009, I believe it was April 2009, and when she saw Dr. Fernandez in 2008. Her testimony was that she couldn't do anything. She couldn't pick up a pot. She couldn't grab a glass. She couldn't do any of those normal activities in daily life, let alone any typing or anything related to her job, without having pain in her hands related to the carpal tunnel. All right. So your position is then that her condition was getting worse. Kurt, you're saying look at what the claimant testified to. You've got Mess saying yes. You have an explanation for that and you're relying on the claimant's testimony, correct? That and that Dr. Mess was ordering more physical therapy and active treatment for her. And the arbitrator in her decision, when she ordered the TTD, her T was based upon the evidence in the case that she was still requesting, where they were seeking active treatment for her and she was still having ongoing problems, that there was not accommodations, the work would not accommodate her, or give her the functional capacity test or the retraining, the rehabilitation that would be required under the statute. She found the TTD to still be appropriate. Wasn't it inconsistent for the arbitrator to, on the one hand, state that she had not yet reached MMI, but then go ahead and award permanent disability, give an award for permanent disability? The parties had agreed in the request for a hearing, had stipulated in the request for a hearing that the TTD period ended as of the date of the hearing. So the parties kind of took that out of the arbitrator's hand. Everybody agreed that her period of disability for TTD ended as of the date of the hearing. I mean, you'd agree, though, wouldn't you, that ordinarily if the arbitrator found that the petitioner's condition had not yet reached a permanent state, then a determination of nature and extent would be deferred? Correct. Correct. But the parties did stipulate that as of the hearing date, the TTD period ended, there was a permanency of it. So based upon that. I think that the record itself shows in the deliberation of the arbitrator when we look at the arbitrator's decision and the commission's affirmation of the decision and the circuit court's affirmation of the decision, that there is sufficient evidence there to support the decision that there was, that TTD should be awarded during that period of time from February of 2006 through November 9th, the date of hearing of 2009. At the very least, in the alternative, I would argue that in the very least, if there is a finding that she did reach massive medical improvement at that time, there are still things which the Respondent owes the Plaintiff, and that would be in the nature of maintenance during that period of time while they give her the functional capacity test, while they give her the additional treatment, while they try to retrain her for her job, if they're not going to take her back. There are things that they should have done. Did you file a notice of appeal? Huh? Did you file a notice of appeal? No. Then how can you ask us to give you relief? The only thing you can ask us to do is affirm. Correct. Correct. But that's not my position. My position is that the TTD was warranted here, that as part of the request for hearing the party stipulated to the TTD period from February of 2006 to November 9th of 2009, there was a stipulation in there that if we look at the request for hearing, which both parties signed, both parties agreed to, the reason that the Respondent, he agreed to the period, but denied that it was applicable to the injuries related to the accident, and that was because of his original position in this case was that there was no notice and that the date of injury was predated the three-year statute of limitations for the filing of the case in October of 2004. His position was that the date of injury was back in 2000. That's what he argued to the commission. He also argued to the commission was the fact that there was no timely notice of the injury, and therefore, even though this period of TTD, they agreed to it, they said it was not compensable because of those two issues of the statute of limitations and the failure to notice. That was their position up until they filed their appeal. That was their position and that was their argument in the circuit court. That was the argument before. Are you suggesting that they didn't argue before the commission in their statement of exceptions and before the circuit court that TTD was inappropriate after? Their argument at that time was that it was inappropriate because of the statute of limitations. They didn't argue it based on the fact that she reached out to them? Their request for exceptions, the issues and the points in the request for exceptions, did not address the fact that she had reached them that month. It was based on that. So that didn't come up at the administrative proceeding and it didn't come up before the circuit court? My reading of the record is different from yours, evidently. From my reading of the record, that's at least at the commission, the argument at the commission was there was four points. One was that the manifestation date had no basis. Two, that the data filing of the application was outside the statute of limitations, that there was a failure to notice, and that the injuries were not related to the accident. Thank you. That was my reading of the request for exceptions. Counsel, your time is up. Thank you. You may reply. Just briefly, Your Honor. We have denied the TTT liability since the inception of the case. We argued based on a causal relation defense, but also the MMI determination. I argued the case myself at the commission level. I'll also note that after October 2006, there was extended lost time in treatment, but it was for pathologies other than the work-related pathologies. It was for bilateral thumb pathologies. It was for an A2 pulley problem. And it was because of a PIP problem which resulted in fusion procedure. So there was a lot going on, but those pathologies were not related to the alleged work accident. That was noted by the arbitrator and confirmed sense. Thank you. Thank you, counsel, both for your arguments in this matter this morning. It will be taken under advisement, a written disposition will issue.